■ In the Matter of DANIEL E. SMITH, Petitioner, against DEPARTMENT OF STATE OF THE STATE OF NEW YORK et al., Respondents.— A proceeding under article 78 of the Civil Practice Act to review a determination made by the Department of State revoking petitioner's real estate broker's license. The revocation was made after a hearing, under the provisions of subdivision 1 of section 441-c of the Real Property Law, on the ground that petitioner was guilty of gross incompetency and had demonstrated untrustworthiness to act as a real estate broker. From the testimony given the director of licenses of the Department of State, who conducted the hearing could and did find as follows: Petitioner undertook to draw a contract of purchase and sale of a farm between one Crocker, as the buyer, and one Coville, as the seller. Coville was willing to sell for $7,500 clear, and Crocker was prepared to buy if he could get a $4,500 mortgage on the place, and so informed petitioner. The latter

represented the buyer as a broker and not the seller. The agreement took the form of an offer of purchase by Crocker and an acceptance by Coville. Among other things, it contained this rather extraordinary language: "possession of premises to be delivered on or before April 1, 1954 19 * * * subject to subletting my property of above address, *also obtaining satisfactory mortgage.*" (Emphasis supplied.) The agreement also provided for a deposit of $500 to be made by the buyer and held by petitioner until the offer was accepted, at which time it would become a part of the purchase price, or returned if not accepted. Petitioner had suggested that the buyer put down the $500 deposit. On February 15, 1954 the buyer gave petitioner his check for $500. This was indorsed by petitioner and also the seller, and was cashed by petitioner immediately. The buyer was unable to obtain the mortgage in the sum of $4,500 on the property and the deal fell through. Thereupon petitioner gave to the seller the deposit of $500 and the latter turned back $250 of it to petitioner. Petitioner claimed that the $250 which he received was a fee for other services which he had rendered to the seller, but under the circumstances the hearing examiner was not obliged to accept this testimony. After the deal fell through the buyer demanded of petitioner that the deposit be returned to him and the petitioner denied this request. Having in mind that questions of credibility are involved we think the hearing examiner had before him substantial evidence to sustain the determination that petitioner was incompetent and did not act with candor and entire good faith toward the buyer who was his principal. Obviously the agreement was most ineptly drawn, and did not constitute an enforcible contract between the parties. The vague and nebulous phrase "subject to * * * obtaining satisfactory mortgage" indicates that there was no meeting of the minds between the buyer and the seller as to this essential part of the transaction. The most that can be said for it is that it left the decision entirely up to the buyer. Certainly the seller could not determine what would be a satisfactory mortgage so far as the buyer was concerned. Under the circumstances the seller had no enforcible contract and the petitioner was not entitled to obtain any commission from his principal. Without passing on the issue of whether the incompetency of petitioner, as reflected in drawing such an impotent agreement, would justify a revocation of his license, we find the acceptance from the seller of one half of the deposit justified the determination of the respondent. Determination unanimously confirmed, without costs. Present — Foster, P. J., Bergan, Coon, Halpern and Gibson, JJ.