*411 Order, Supreme Court, New York County (Melvin L. Schweitzer, J.), entered on or about July 30, 2012, which, upon reargument, granted defendant’s motion to dismiss the complaint, unanimously modified, on the law, to declare in defendant’s favor on the first cause of action, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered April 19, 2012, unanimously dismissed, without costs as superseded by the appeal from the order entered on or about July 30, 2012.
In 1994 plaintiff, as lessee, and defendant’s predecessor in interest, as lessor, entered into a lease. Section 10.1 (a) requires plaintiff to, among other things, maintain the premises. Section 10.1 (b) of the lease states that “in the event a comprehensive, public maintenance plan for Hudson River waterfront piers in New York City (as opposed to a limited plan for certain designated piers) is adopted and becomes effective during the term of this Lease, then Lessor shall, or if Lessor is not the entity establishing such plan, it shall use its best efforts to (i) include the Premises in such plan, and (ii) assure that Lessee’s obligations to maintain the piers within the Premises pursuant to subsection (a) above is not relied upon to exclude the Premises from such plan or to reduce the amount of maintenance activity or funding applied to the Premises under such plan.” The lease does not define “comprehensive, public maintenance plan.”
The first cause of action of plaintiffs complaint seeks a declaration that defendant has established and undertaken the “comprehensive, public maintenance plan” mentioned in section 10.1 (b) of the lease. The second cause of action alleges that defendant has breached the lease by failing to include the premises in the plan.
There are 57 Hudson River waterfront piers in New York City. Twenty-one and a half piers are excluded from the Hudson River Park (the Park) by the Hudson River Park Act (the Act) and by the Park’s geographical boundaries. In addition, defendant does not provide maintenance for at least 11 additional piers, including the three leased by plaintiff. In sum, even if one includes the four piers that have been dismantled and turned into “pile fields” (demolished piers), defendant is providing maintenance for only 24.5 out of 57 piers, or 43% of the total. That is hardly “comprehensive,” as that term is defined in the dictionary (see Merriam-Webster’s Collegiate Dictionary 255 [11th ed 2005] [defining “comprehensive” as “covering completely or broadly”]; see also R/S Assoc. v New York Job Dev. Auth., 98 NY2d 29, 33 [2002] [consulting dictionary for meaning of a term]).
*412 Plaintiffs reliance on the massive scale and cost of the Park is unavailing. The lease does not merely refer to a “comprehensive” plan; it refers to a comprehensive maintenance plan. Similarly, defendant’s acknowledgment that the Park meets the objectives of the New York City Comprehensive Waterfront Plan is unavailing because the latter plan is not a maintenance plan.
Even if a comprehensive maintenance plan within the meaning of section 10.1 (b) has been adopted, plaintiffs claims are time-barred. Defendant’s contractual obligation was to include the premises in the plan and assure that the amount of funding for the premises under the plan was not reduced; it was not a continuing obligation to fund pier maintenance. Therefore, defendant’s time for performance was, at the latest, the date when the plan was adopted and became effective.
In its complaint, plaintiff alleged that the comprehensive maintenance plan was a plan that defendant submitted to the Army Corps of Engineers in 1998. However, on appeal, plaintiff contends that the Act is the plan. In any event, since the Act became effective in 1998, plaintiffs claims, brought in 2011, are still time-barred (see CPLR 213 [2]).
Plaintiffs argument that it could not have sued for breach of contract before 2009 because it had sustained no damages is unavailing. “In New York, a breach of contract cause of action accrues at the time of the breach,” even if no damage occurs until later (Ely-Cruikshank Co. v Bank of Montreal, 81 NY2d 399, 402 [1993]).
Since defendant’s obligation under section 10.1 (b) is unambiguous, plaintiff may not resort to extrinsic evidence, such as the parties’ course of performance (see W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162-163 [1990]).
We have considered plaintiffs remaining arguments and find them unavailing. Concur—Tom, J.P., Sweeny, Saxe, Román and Feinman, JJ.